O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALEJO MARTINEZ,

     Petitioner,

v.

TODD M. LYONS, et al.,

     Respondents.

Case No. 5:26-cv-01795-KES

ORDER DENYING PETITION

## I.   INTRODUCTION

Alejo Martinez ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 2), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  The parties have consented to the jurisdiction of the Magistrate Judge.  (Dkt. 11.)  As discussed further below, the Petition is denied because Petitioner has not demonstrated that his arrest was illegal or that the immigration court's denial of bond was an abuse of discretion.

## II.   PROCEDURAL HISTORY

Petitioner filed the Petition (Dkt. 2) and supporting exhibits (Dkt. 3) on

April 11, 2026.[1]  The Petition raises the following claims:

Ground 1(a): Respondents committed an "unlawful warrantless arrest based on ethnic profiling," which violated the Fourth Amendment.  (Pet. at 14.)

Ground 1(b): Respondents violated Petitioner's Fifth Amendment Due Process rights by holding him for "109 days without [a] constitutionally adequate bond hearing."  (Pet. at 15.)

Ground 2: "Petitioner is detained under § 1226(a), is a Maldonado Bautista class member, and is entitled to an individualized bond hearing under the correct standard."  (Pet. at 15.)  The denial of bond by an immigration judge ("IJ") "def[ied] … the Maldonado Bautista declaratory judgment" because the IJ "(1) failed to conduct a genuine Guerra[2] totality analysis; (2) improperly attributed minor-child entries to adult volitional misconduct; (3) treated INA § 212(a)(9)(C) inadmissibility as a categorical bond bar; (4) dismissed documented medical evidence of family hardship; and (5) failed to credit the pending I-130 and $730,000 in U.S. assets as compelling flight-risk counterweights."  (Pet. at 15.)

Ground 3: The IJ's bond decision was "arbitrary and capricious agency action" under 5 U.S.C. § 706, the Administrative Procedures Act ("APA").  (Pet. at 15-16.)

The Petition seeks three types of relief in the alternative: (a) immediate release from custody; (b) that this Court conduct a bail hearing within seven days; or (c) remand to an IJ for a new bond hearing within seven days.  (Pet. at 16-17.)

---

[1] Petitioner filed an application for a temporary restraining order ("TRO") on April 15, 2026.  (Dkt. 7.)  The Court denied the TRO, finding that the expedited briefing schedule established by General Order 26-05 was sufficient to expeditiously resolve Petitioner's claims.  (Dkt. 10.)

[2] As discussed below, In Re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006) established the factors IJs consider in determining whether to grant release on bond.

Respondents answered the Petition on April 20, 2026. ("Answer" at Dkt. 13.) Petitioner filed a reply on April 21, 2026. ("Reply" at Dkt. 15.)

**III.    FACTUAL RECORD**

Petitioner is a Mexican citizen who has resided in the U.S. since February 20, 2007. (Pet. at 6.) He was fifteen years old when he first entered the U.S. (Id.) Between July 2011 and May 2017, he resided in Texas, and since May 2017, he has resided in Desert Hot Springs, California. (Id.) Since 2017, Petitioner has operated his own landscaping business. (Id.) He has filed income tax returns every year since 2011. (Id.) He does not have a criminal record. (Id.)

Petitioner is married to a naturalized U.S. citizen, and they have five minor children who are U.S. citizens. (Id. at 7-8.) Petitioner's wife has epilepsy, "rendering her legally unable to drive (California Vehicle Code § 12806), functionally unable to maintain employment, and unable to independently care for five minor children during seizure episodes." (Pet. at 8.)

Petitioner's wife has filed a Form I-130 Petition for Alien Relative on Petitioner's behalf. (Id. at 7.)

On December 22, 2025, Petitioner was arrested by ICE "during an interior enforcement operation in the Cathedral City area…." (Id. at 2.) Petitioner was not the target of the enforcement operation, but he was approached because he matched the physical description of the target. (Id. at 9; Pet. Ex. A-2 / Dkt. 3 at 9-10 (Form I-213, Record of Deportable/Inadmissible Alien).) According to ICE paperwork documenting Petitioner's arrest, the investigation proceeded as follows:

> On December 22, 2025, Field Operations Teams (FOT) 15 conducted a targeted enforcement operation to locate Hernandez-Medina, Sabil … at his last known residence … [in] Cathedral City.
>
> …
>
> At approximately 0710 hours, officers observed a male matching the physical description of Hernandez near the vicinity of

the trailer park.  Officers approached him and made contact.

The DOs [Deportation Officers], wearing tactical gear with approved "POLICE" and "ICE" identifiers, informed the subject that they were investigating and requested his identification and name. The subject identified himself as [Petitioner]….  It was determined that [Petitioner] was not the target of the operation.

The DOs conducted a consensual encounter with [Petitioner] and asked the following questions:

Would you be willing to answer some questions.  [Petitioner] said, "Yes."

What country are you a citizen of?  [Petitioner] stated that he is a citizen of Mexico.

How did you enter the United States?  [Petitioner] stated that he entered from Mexico.

[Petitioner] stated that he had no status in the United States.

DO Dey contacted LESC [ICE's Law Enforcement Support Center] over the phone, and LESC stated that [Petitioner] had no status in the United States.

Subsequently, [Petitioner] was placed under arrest and taken into ICE custody without incident.

(Pet. Ex. A-2 / Dkt. 3 at 9-10 (Form I-213, Record of Deportable/Inadmissible Alien); see also Answer Ex. 3 / Dkt. 13-3 at 2-3 (same form).)

On December 22, 2025, the same day as his arrest, Petitioner was served with a notice to appear ("NTA").  (Pet. at 10; Pet. Ex. A-1 / Dkt. 3 at 3-6 (the NTA).)  The NTA charged Petitioner with being a noncitizen "present in the United States who has not been admitted or paroled" under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  (Id. at 4.)

On March 6, 2026, about two and a half months after his arrest, Petitioner

4

had a bond hearing before an IJ.  (Pet. at 11.)  The IJ denied bond, finding Petitioner was a flight risk.  The IJ reasoned as follows:

> In 236(a) Bond Proceedings (Maldonado Bautista Class): [Petitioner] is a flight risk such that no bond is appropriate in this case. The Court makes this finding because [Petitioner] has illegally entered the United States several times (at least 3 times as acknowledged by [Petitioner]).  This means that [Petitioner] is precluded from adjustment of status under 212(a)(9)(C) of the Act.  [Petitioner] has worked for 17 years without authorization.  [Petitioner's] immigration and work history demonstrates [Petitioner's] nearly two decade long disregard for the laws of the United States.  And, the issue of [Petitioner's ] wife's hardship is a triable issue, as right now she and [Petitioner's] five young children are being cared for by [Petitioner's] in-laws, which means that despite the documented medical issues, such relief is not guaranteed.  Finally, it is unclear where [Petitioner] will actually reside, as the sponsor (his wife's brother in law) states that he will reside with [Petitioner].  But, [Petitioner] also testified under oath that he would live in an unfinished house under construction, while his wife would live in an RV.  This creates a clear address issue, and further undermines [Petitioner's] assertions that he is not a flight risk.

(Answer Ex. 1 / Dkt. 13-1 (IJ's order).)   On March 20, 2026, Petitioner appealed the bond decision to the Board of Immigration Appeals ("BIA").  (Reply at 3.)

Petitioner's removal proceedings are ongoing.  He has an individual merits hearing scheduled for June 30, 2026.  See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ and ICE Detainee Locator, https://locator.ice.gov/odls/ (last accessed May 5, 2026).

5

## IV.    DISCUSSION

### A.    Petitioner is Not Entitled to Relief on Ground 1(a), Because He Has Not Demonstrated That His Stop or Arrest Were Unlawful.

In Ground 1(a), Petitioner argues that Respondents violated his Fourth and Fifth Amendment rights because he was subject to an "unlawful warrantless arrest based on ethnic profiling." (Pet. at 14 (citing Gonzalez-Rivera v. INS, 22 F.3d 1441, 1449 (9th Cir. 1994)).) He argues officers "approached Petitioner because he 'matched the physical description' of a different individual" and "[n]o independent indicia of removability – other than physical appearance – justified the stop." (Pet. at 14.) He argues, "Because no lawful basis independent of appearance existed for the initial stop, the resulting arrest and all evidence derived from it – including evidence of alienage – are constitutionally infirm and subject to suppression." (Pet. at 14.)[3]

#### 1.    Legal Standard.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. amend. IV. "A seizure occurs when a law enforcement officer, through coercion, physical force, or a show of authority, in some way restricts the liberty of a person." United States v. Washington, 387 F.3d 1060, 1068 (9th Cir. 2004) (cleaned up). Generally speaking, an officer's actions rise to the level of a seizure if any one of the following occurs: "if there is a threatening presence of several officers, a display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Washington, 490 F.3d 765, 771 (9th Cir. 2007) (internal quotation and citation omitted).

"Except at the border and its functional equivalents," immigration agents

---

[3] Respondents' Answer does not address the legality of the stop or arrest.

may stop individuals in public only after identifying "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that [the persons stopped are noncitizens] who may be illegally in the country." United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975).  Reasonable suspicion comprises two elements: "the assessment must be based upon the totality of the circumstances," and it "must arouse a reasonable suspicion that *the particular person being stopped* has committed or is about to commit a crime." United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis in original).  "[T]o establish reasonable suspicion, an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." United States v. Manzo-Jurado, 457 F.3d 928, 935 (9th Cir. 2006).  "Where, as here, the majority (or any substantial number) of people share a specific characteristic, that characteristic is of little or no probative value in such a particularized and context-specific analysis." Montero-Camargo, 208 F.3d at 1131; see id. at 1135 ("Hispanic appearance is ... of such little probative value that it may not be considered as a relevant factor where particularized or individualized suspicion is required."); Manzo-Jurado, 457 F.3d at 937 ("By itself ... an individual's inability to understand English will not justify an investigatory stop because the same characteristic applies to a sizable portion of individuals lawfully present in this country.").

### 2.    Analysis.

In arguing that his stop and/or arrest were illegal, Petitioner has not provided an affidavit or any factual allegations describing the stop and arrest from his point of view.  Rather, he relies solely on the facts stated in the ICE Form I-213.  These facts do not demonstrate that officers lacked reasonable suspicion to stop Petitioner.  The Form I-213 states that Petitioner "match[ed] the physical description" of another noncitizen for whom they had an arrest warrant.  (Dkt. 3 at 9.)  While this might indicate that the officers stopped Petitioner solely because he

looked Mexican or Hispanic—a fact that would not, alone, provide reasonable suspicion under the case law cited above—this might also indicate that officers stopped Petitioner because he was the same age, height, or weight as their target. The facts alleged do not demonstrate that the officers lacked reasonable suspicion for the stop.

The facts alleged in the Form I-213 likewise demonstrate that the officers had probable cause to arrest Petitioner. Petitioner told them that "he had no status in the United States," and officers confirmed this via ICE records. (Dkt. 3 at 9-10.) Officers have statutory authority to arrest noncitizens for violations of immigration laws and regulations. See generally Arizona v. United States, 567 U.S. 387, 407 (2012); 8 U.S.C. § 1357(a); 8 C.F.R. § 287.8(c)(2)(ii).[4]

To the extent Petitioner alleges there were two factual errors in the Form I-213 regarding (1) the nationality of Petitioner's spouse, and (2) whether Petitioner had dependent children (Pet. at 9-10), Petitioner does not explain why these facts were material to the grounds given for his stop or arrest.

Accordingly, Petitioner is not entitled to relief on Ground 1(a), which argues his stop and arrest were illegal.

**B.      Petitioner is Not Entitled to Relief on Grounds 1(b), 2, or 3 Because He Has Not Shown that Denying Him Bond Was an Abuse of Discretion.**

Although the Petition frames these claims in slightly different ways, all of them challenge the result of the IJ's bond decision.

In Ground 1(b), Petitioner argues that Respondents violated "Fifth Amendment Due Process" because he was held for "109 days without

---

[4] Petitioner does not argue that the warrantless arrest was improper because Petitioner was not "likely to escape before a warrant [could] be obtained." 8 U.S.C. § 1357(a)(2).

8

constitutionally adequate bond hearing." (Pet. at 15.) In support of the argument that the bond hearing was constitutionally inadequate, Petitioner states that "[t]he IJ's denial based on minor-child entries, inadmissibility-as-bond-bar, dismissal of uncontroverted medical evidence, and a housing confusion now fully resolved"; and "[t]he I-213's false recording of 'no children or dependents' when Petitioner has five USC [U.S. citizen] children…." (Pet. at 15.)

In Ground 2, Petitioner argues that Respondents' "defiance of the Maldonado Bautista declaratory judgment constitutes an independent constitutional violation." (Pet. at 15.) He argues that, as "a Maldonado Bautista class member," he "is entitled to an individualized bond hearing under the correct standard." (Pet. at 15.) In support of the argument that the IJ did not use the correct legal standard, Petitioner states: "[t]he IJ's bond denial: (1) failed to conduct a genuine Guerra totality analysis; (2) improperly attributed minor-child entries to adult volitional misconduct; (3) treated INA § 212(a)(9)(C) inadmissibility as a categorical bond bar; (4) dismissed documented medical evidence of family hardship; and (5) failed to credit the pending I-130 and $730,000 in U.S. assets as compelling flight-risk counterweights." (Pet. at 15.)

In Ground 3, Petitioner argues that the IJ's bond decision was "arbitrary and capricious agency action" under 5 U.S.C. § 706, the Administrative Procedures Act ("APA") because of the "agency's failure to consider the pending I-130 petition as a Guerra factor…." (Pet. at 15-16.)

### 1. Jurisdiction.

Respondents argue that these claims should be dismissed for lack of jurisdiction under 8 U.S.C. § 1226(e) and § 1252(a)(2)(B)(ii). (Answer at 5.)

In Martinez v. Clark, 124 F.4th 775 (9th Cir. 2024), the Ninth Circuit held that these provisions do "not strip federal courts of 'traditional habeas jurisdiction," and an unreviewable "discretionary judgment does not include constitutional claims or questions of law." Id. at 781-82 (citation omitted). In

9

Martinez, the Ninth Circuit held that an IJ's determination that a noncitizen is a "danger to the community" is a "mixed question of law and fact" that can be reviewed by a federal district court in a habeas proceeding.  124 F. 4th at 782-83. The Ninth Circuit reasoned, "Even though what constitutes 'dangerousness' is malleable and involves agency discretion, [Wilkinson v. Garland, 601 U.S. 209 (2024)] instructs that this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts.'"  Id. at 783.  Multiple district courts applying Martinez have also concluded that an IJ's determination that a noncitizen is a "flight risk" is similarly a reviewable mixed question of law and fact.  See Zaitsev v. Warden, No. 2:26-cv-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026) (collecting cases).

Accordingly, the Court has jurisdiction over these claims.

### 2.    Administrative Exhaustion.

Respondents argue that these claims should be dismissed for failure to exhaust administrative remedies, i.e., complete Petitioner's appeal to the BIA. (Answer at 8-10.)  Petitioner argues that exhaustion should be excused because: (a) "the BIA's expertise adds nothing where the legal errors are pure questions of constitutional law … and statutory interpretation"; (b) meaningful review is unlikely because of the recent terminations of more than a hundred BIA judges; and (c) his BIA appeal has been pending for more than a month without a briefing schedule being set, and it is unlikely to be decided for 4 or 5 months due to a large BIA case backlog.  (Reply at 13-15.)

Where a petitioner denied bond under § 1226(a) does not exhaust his administrative remedies by appealing to the BIA, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."  Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011).  A number of district courts in this

10

circuit have found excused exhaustion due the lengthy delays in the BIA process, especially where the petitioner has presented a strong claim of error. See, e.g., Mendoza v. Noem, No. 25-cv-3227-MWF-AGR, 2026 WL 923311, at *5 (C.D. Cal. Apr. 1, 2026) ("As other courts have recognized under similar circumstances, BIA appeals can take months before resolution. In the meantime Petitioner would be subject to detention that is almost certainly unlawful, and thus would suffer irreparable injury."); Miri v. Bondi, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026) ("[R]equiring Miri to go before the Board of Immigration Appeals would prolong his unconstitutional detention, thereby causing irreparable injury. Hernandez, 872 F.3d at 987 (holding a court may waive exhaustion requirements if "pursuit of administrative remedies" would lead to "irreparable injury").").

Even assuming it is appropriate to waive exhaustion in this instance, for the reasons discussed below, Petitioner has not demonstrated that the IJ's bond ruling should be overturned under the abuse of discretion standard applicable to review by this Court.

### 3.    Merits.

a.    Legal Standard.

As the Ninth Circuit explained in Martinez:

To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. … The nine factors an IJ "may" consider "include any or all of the following:"

(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in

11

court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez, 124 F.4th at 783 (quoting Guerra, 24 I. & N. Dec. at 40).

In Martinez, the Ninth Circuit held that a district court may only review the immigration court's dangerousness finding for an "abuse of discretion." 124 F.4th at 784. Under this standard, courts "cannot reweigh evidence ... [but] can [only] determine whether the BIA applied the correct legal standard.'" Martinez, 124 F.4th at 785 (citation omitted). Regarding the petitioner's argument that the BIA had applied the wrong burden of proof, the Ninth Circuit reasoned:

Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. Cole v. Holder, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." Id. Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." See Mendez-Castro v. Mukasey, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. Cole, 659 F.3d at 771-72.

Martinez, 124 F.4th at 785 (finding "no such red flags" where "[a]t the outset of its decision, the BIA properly noted that the government bore the burden to establish

12

by clear and convincing evidence that [the petitioner was] a danger to the community," and where the decision noted but was not convinced by the petitioner's history of rehabilitation).

District courts have applied the same standard to the flight risk determination. See, e.g., Miri v. Bondi, No. 26-cv-00698-MEMF-MAR, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where the IJ "did not explain the reasons for denying Miri's bond" or "describe which Martinez factors were considered, if any, or what evidence was relied on," and where "the record [did] not establish that the [IJ] relied on the appropriate factors"); Restrepo v. Noem, No. 26-cv-01735-AJR, 2026 WL 1047688, at *5 (C.D. Cal. Mar. 23, 2026) (finding abuse of discretion where the IJ "relied solely on the existence of the … removal order to find that Petitioner posed a flight risk").

b.      Analysis.

Petitioner's arguments do not plausibly allege an abuse of discretion by the IJ, particularly in light of the IJ's written decision explaining the IJ's reasoning.

Many of Petitioner's arguments essentially ask the Court to re-weigh the evidence. For example, the IJ was unconvinced that Petitioner's detention posed a hardship to Petitioner's wife, because Petitioner's parents were helping her care for their children. (Answer Ex. 1 / Dkt. 13-1 (IJ's order).)  Petitioner responds that his parents cannot do this indefinitely because they are elderly. (Pet. at 12.)  The IJ also found the record unclear regarding where Petitioner would live upon his release. (Answer Ex. 1 / Dkt. 13-1 (IJ's order).)  Petitioner argues this confusion was "inadvertent" and attempts to explain away any discrepancies in testimony. (Pet. at 12.)  Even if this Court might have weighed this evidence differently under a de novo standard, these are the types of fact-finding issues that this Court cannot re-weigh under an abuse of discretion standard.

To the extent Petitioner argues that the IJ should not have considered his illegal entries when he was a minor, or his history of working in the U.S. without

proper authorization, he has not cited any authority demonstrating that it was legal error for the IJ to consider these things. See generally Martinez, 124 F.4th at 783 (noting that IJs may consider "the alien's employment history," "the alien's history of immigration violations," and "the alien's manner of entry into the United States").

Accordingly, Petitioner has not shown that he is entitled to relief on Grounds 1(b), 2, or 3.[5]

V.    CONCLUSION

IT IS THEREFORE ORDERED that the Petition (Dkt. 2) is **denied**.

DATED:  May 7, 2026

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[5] For the same reasons, the IJ's decision was not "arbitrary and capricious" under the APA.

14